## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DWAYNE CROPPER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 12-969-LPS |
| | : | |
| CARL DANBERG, et al., | : | |
| | : | |
| Defendants. | : | |

Evan O. Williford and Andrew J. Huber, THE WILLIFORD FIRM LLC, Wilmington, DE

    Attorneys for Plaintiff

Ryan P. Connell, Deputy Attorney General, DEPARTMENT OF JUSTICE STATE OF
DELAWARE, Wilmington, Delaware

    Attorneys for Defendants

## **MEMORANDUM OPINION**

August 1, 2019
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I. Introduction

Dwayne E. Cropper is an inmate at the James T. Vaughn Correctional Center ("Vaughn"), located in Smyrna, Delaware. (D.I. 120-1 at B134 ¶ 1) Mr. Cropper, proceeding pro se, initially filed his Complaint on July 23, 2012 against former Department of Correction ("DOC") Commissioner Carl Danberg, former Vaughn Warden Perry Phelps, Vaughn Deputy Warden James Scarborough, Vaughn Lieutenant John Endres, former Vaughn Sgt. Dereke Doane, and former Vaughn Correctional Officer Isaac Torres (collectively "Defendants"). (D.I. 2) The Court appointed counsel for Plaintiff from its Federal Civil Panel in March of 2016. (D.I. 77; D.I. 79) Plaintiff filed the now operative Amended Complaint in July 2017, alleging violations of Plaintiff's rights under the Eighth Amendment, the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA), and seeking monetary and injunctive relief. (D.I. 86) Defendants answered in September 2017. (D.I. 87)

Pending before the Court is a motion for summary judgment filed by Defendants. (D.I. 117) The motion was fully briefed (D.I. 118, 120, 122, 125, 126), and the Court heard oral argument on November 2, 2018 (Tr.).

## II. Background

Plaintiff's complaint relies on a series of events leading to his fall from the top bunk of his prison cell. He claims that deliberate indifference to his medical conditions on the part of Defendants led to his inappropriate placement on the top bunk and, thus, his fall. (D.I. 120 at 2) Defendants describe largely the same series of events, but argue that "there is no evidence that supervisory Defendants were deliberately indifferent." (D.I. 118 at 1)

During his time in Vaughn (1999 until the present), Mr. Cropper has suffered from long-running medical issues, including with his feet and back. (D.I. 119 at A-10)  Although he was diagnosed with seizure disorders in 1965 (D.I. 120 at 6), both he and Vaughn were unaware of this disorder until he was assessed in 2016 – after the incident from which this suit arises – at which point he was permanently assigned a bottom bunk. (D.I. 120-1 at B137)  Previously, in 2008, in response to Mr. Cropper's reported medical conditions, Plaintiff was granted a bottom bunk memo;[1] then in 2011, Mr. Cropper was transferred to a top bunk after his previous bottom bunk assignment had expired, without warning or his knowledge. (D.I. 220-1 at B137, B94)  His foot and back conditions had not changed, nor is there evidence that these conditions would have been expected to change. Mr. Cropper was moved to a top bunk with no notice. (D.I. 120 at 6-7) (citing D.I. 120-1 at B212)  Mr. Cropper immediately filed a medical request to transfer bunks. (D.I. 120-1 at B13, B14)  He alleges that he directly told Defendants Phelps, Doane, and Torres that he should be transferred for medical reasons. (*Id.* at B93, B96-97)  He also alleges that he told Defendant Endres that he should be transferred back to a bottom bunk, though Endres did not recall this. (*Id.* at B95-96, B150)  Mr. Cropper was seen by medical staff on October 25, who recommended he be given a bottom bunk due to back pain and flat feet (D.I. 119 at A-02), with the end date space left blank (D.I. 120-1 at B138).  The memo was returned to medical personnel to correct the deficiency, and on November 2 it was updated with one-year expiration date; on November 4 the memo was approved by Defendant Scarborough. (*Id.* at

---

[1]This assignment appears to have been based on Plaintiff's non-seizure health issues, namely his back and foot. (*See* D.I. 120 at 6; D.I. 120-1 at B137; D.I. 119 at A-02)

B138; B19-20)  Mr. Cropper did not learn of this approval.  Defendant Scarborough relied on the

transfer officer to move Mr. Cropper, but this was not done immediately.[2]

On November 18, 2011, Mr. Cropper had what he later learned was a seizure in his sleep

and fell from his top bunk, hitting his head and causing serious injuries.  (*See* D.I. 120 at 9)  He

was not sure what exactly caused his fall, but testified that his cellmate woke him up and said

"[m]an, you must have had a seizure or something."  (D.I. 119 at A-1, A-12)

On September 1, 2016, Dr. Herman Ellis, the Interim Medical Director of Sussex

Correctional Institution, diagnosed Mr. Cropper with generalized seizure disorder, sleep seizures,

and sleep-related hypermotor epilepsy.  (D.I. 120-1 at B453-56)  He was treated by Dr. Robert J.

Varipapa on December 1, 2016 and prescribed medication for his diagnoses.  (*Id.* at B438-40)

Mr. Cropper has not been assigned to a top bunk since November 2014.  (D.I. 119 at A-07)  On

May 1, 2017, Plaintiff was given an indefinite bottom bunk memo for "seizure disorder."  (D.I.

120-1 at B115)

Mr. Cropper filed this lawsuit on July 23, 2012.[3]  Plaintiff describes what he sees as

inappropriate policies that led to and caused his injuries.  Specifically, Vaughn has policies for

inmates who request not to be placed on top bunks, requests it grants by way of a memorandum

signed by the Deputy Warden of Program Administration.  (*Id.* at B136, B254)  Vaughn

generally grants time-limited memoranda for most medical conditions, based on Defendant

---

[2]There is no evidence in the record as to why the transfer was not implemented, or if any of the
Defendants knew of this delay.  At oral argument, Plaintiff contended that Defendant
Scarborough should have taken a more active role in disciplining prior failures to transfer and
educating transfer officers.  (*See* Tr. at 37) ("Scarbrough should have disciplined, fired, moved,
educated, retrained, or had the transfer officer monitored.")

[3]Although not directly related to the claim, Plaintiff alleges that Defendant Scarborough
retaliated against him for filing suit by placing him on a "jerks list," because Plaintiff sued him
personally.  (D.I. 120 at 9)

Scarborough's reluctance to bind a successor's hand with a permanent memorandum and a belief that an inmate's conditions may improve over time or be overstated. (D.I. 119 at A-38, A-39) A bottom bunk is indefinitely granted only when it is "painfully obvious" that an inmate needs the bunk. (*Id.* at A-41) These bottom bunk memoranda are not provided to inmates; nor are inmates informed when their memorandum is granted or expired. (D.I. 120-1 at B288) Moreover, the policy at Vaughn provides that an inmate who is granted a bottom bunk may only be transferred once a bottom bunk becomes available. (D.I. 120-1 at B65, B247, B261) Plaintiff points out two cases where inmates alleged injury as a result of bunking issues, as evidence that certain defendants should have been aware of the problems he, too, identifies. (*See* D.I. 120 at 5-6) (citing *Smith v. Danberg*, 2010 WL 2400468 (D. Del. June 15, 2010); *Guilfoil v. Pierce*, 2009 WL 688957 (D. Del. Mar. 16, 2009))

## III.    Legal Standards

### A.    Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be -- or, alternatively, is -- genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the

moving party has carried its burden, the nonmovant must then "come forward with specific facts

showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation

marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party,

and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating

party opposing summary judgment "must present more than just bare assertions, conclusory

allegations or suspicions to show the existence of a genuine issue") (internal quotation marks

omitted). The "mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment;" a factual dispute is

genuine only where "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a

scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a

motion for summary judgment; there must be "evidence on which the jury could reasonably

find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## B.    Standing

Standing "is comprised of both constitutional and prudential components." *Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery Cty.*, 271 F.3d 140, 145 (3d Cir. 2001). The requirement of constitutional standing derives from the Article III "case" or "controversy" requirement, compelling "a plaintiff to demonstrate that he or she suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Id.* "The 'core component'" of the requirement that a litigant have standing to invoke the authority of a federal court "is an essential and unchanging part of the case-or-controversy requirement of Article III." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). Further, "a plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp.*, 126 S. Ct. at 1867.

In addition to establishing Article III standing, a party must establish "prudential standing." *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004); *Twp. of Lyndhurst v. Priceline.com Inc.*, 657 F.3d 148, 154 (3d Cir. 2011). In connection with prudential standing:

> (1) the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties; (2) even when the plaintiff has alleged reasonable injury sufficient to meet the requirements of Article III, the federal courts will not adjudicate abstract questions of wide public significance which amount to generalized grievances pervasively shared and most appropriately addressed in the representative branches; and (3) the plaintiff's complaint must fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 485 (3d Cir. 1998) (internal quotation marks and citations omitted).

**C.    Section 1983**

In an action under 28 U.S.C. § 1983 ("Section 1983 or "§ 1983"), the plaintiff must prove two essential elements: (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of a federally secured right. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). Section 1983 is not a source of substantive rights. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). Rather, it is a means to redress violations of federal law by state actors. *Id.*; *see also Holocheck v. Luzerne County Head Start, Inc.*, 385 F.Supp.2d 491, 498–99 (M.D. Pa. 2005).

**D.    Eighth Amendment**

The Eighth Amendment proscription against cruel and unusual punishment mandates that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). To set forth a cognizable claim for a violation of the Eighth Amendment, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials indicative of deliberate indifference to that serious need. *See id.* at 104; *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Prison officials are deliberately indifferent when they are aware that a prisoner faces a substantial risk of serious harm yet fail to take reasonable steps to avoid the harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). One manifestation of deliberate indifference is when prison officials "intentionally deny[] or delay[] access to medical care." *Estelle*, 429 U.S. at 104-05.

To prevail, Plaintiff must "demonstrate (1) that the defendant [was] deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse*, 182 F.3d at 197. An inmate may show that a prison official was deliberately indifferent through evidence that the official intentionally denied or prevented receipt of, or delayed access to, medical care. *See id.* While prison administrators are not deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by. . . [a] doctor," they may be found to be deliberately indifferent if they refuse to provide treatment that has been prescribed by a doctor. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

E.    **Americans with Disabilities and Rehabilitation Acts**

A plaintiff alleging a disability claim under the Americans with Disabilities Act or Rehabilitation Act must show that "1) he is a qualified individual; 2) with a disability; 3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; 4) by reason of his disability." *Bowers v. NCAA*, 475 F.3d 524, 553 n.32 (3d Cir. 2007); *see also Delano-Pyle v. Victoria Cnty.,* 302 F.3d 567, 574 (5th Cir. 2002); *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).

## IV. Discussion

### A. Standing[4]

Accepting as true all reasonable inferences in Plaintiff's favor from the disputed facts, Mr. Cropper has adequately demonstrated, constitutional standing to pursue his claims.[6] Specifically, Mr. Cropper's injury is fairly traceable to the alleged bad acts of Defendants. Accepting contested facts in his favor, Mr. Cropper reported back pain, a foot deformity, balance issues, and prior experiences falling off the bed, to various authorities in Vaughn. He also applied for and was granted a temporary bottom bunk memo due to his foot and back problems. Mr. Cropper was not provided access to this memo nor insight into the length of his placement (pursuant to defendant Scarborough's practice), and after the memo expired he was transferred to a top bunk. Plaintiff re-applied for a bottom bunk for the same reasons as before and was granted another memo. Plaintiff was not made aware of the grant, nor was he immediately transferred to a bottom bunk. During this interim period, Plaintiff fell from the top bunk and suffered injuries. Plaintiff was subsequently diagnosed with seizures, and learned that a seizure had been the likely cause of his fall.

The Third Circuit has held that the "fairly traceable" element is "akin to 'but for' causation and found the traceability requirement met even where the conduct in question might not have been a proximate cause of the harm, due to intervening events." *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 418 (3d Cir. 2013). "The fairly traceable requirement . . . is not

---

[4] The Court reaches its conclusion on the causation prong of standing. Because summary judgment on the merits is warranted, the Court does not reach whether Plaintiff's injury can be redressed prospectively, or if such prospective relief has been mooted by Vaughn's grant of a permanent memo. (*See* D.I. 125 at 3; D.I. 126 at 3)

[6] Defendants specifically allege a lack of constitutional standing with respect to the claims against Defendants Doane, Endres, and Torres. Defendants do not challenge prudential standing.

equivalent to a requirement of tort causation." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 257 (3d Cir. 2005) (internal quotation marks omitted). "[T]he Supreme Court has cautioned against 'wrongly equat[ing]. . . injury fairly traceable to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation.'" *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 366 (3d Cir. 2014) (quoting *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997)).

Here, Mr. Cropper's injury flowed directly from his placement on a top bunk and is fairly traceable to the allegedly wrongful behavior of Defendants, namely that Defendants ignored reported conditions that would have made them aware that a top bunk placement carries a significant risk of falling for Mr. Cropper. Although Plaintiff cannot point to his seizure diagnosis as a basis for standing, due to its later revelation (*see* Tr. at 3-5), he had medical needs other than seizures that Defendants were aware of and would make a top bunk dangerous. (*See* D.I. 120 at 11 (citing "B11 (gross deformities of feet); A2 (chronic back pain, flat feet, and not very balanced/steady with his gait); B107 (partial right foot/heel amputation)"); Tr. at 20-21) Thus, Plaintiff's claim rests on the grounds that he suffered from a series of known conditions and Defendants failed to protect against the danger of falling from a top bunk arising from these maladies. Mr. Cropper possesses standing to challenge deficiencies in Vaughn's bunk assignment system, as his injury is fairly traceable to these alleged deficiencies.

## B.  Section 1983

### 1.  Direct Liability

Plaintiff contends that a reasonable juror could find that Defendants violated his Eighth Amendment rights in their individual and representative capacities by acting with deliberate indifference to his serious medical needs. The Court disagrees.

"A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm." *Guilfoil*, 2009 WL 688957, at *4. No prison official was aware that Mr. Cropper faced a substantial risk of serious harm from falling off a top bunk while sleeping until after Plaintiff fell from the bed. Prior to his fall, Plaintiff himself did not know of his seizure disorder. (*See* Tr. at 20-21) Although Plaintiff has demonstrated certain medical issues – "gross deformities of feet," "chronic back pain, flat feet, and not very balanced/steady with his gait," and "partial right foot/heel amputation" (D.I. 119 at 11) – a reasonable factfinder could not find that any prison official was deliberately indifferent to a serious medical need. Plaintiff's suggestions that Defendants should have been aware that he was "moving and twitching in his sleep" and knew that he had fallen previously are insufficient to support a finding of the requisite mental state for deliberate indifference. (D.I. 126 at 2; Tr. at 20-21) Although Plaintiff provides attorney argument on how his deformed foot could lead to falling while climbing up to a top bunk, it is unclear if this has ever happened and this argument is not supported by the briefing or the record. (*See* Tr. at 21-22) ("Vaughn doesn't have any ladders for their bunk beds, and it is difficult for him with his feet and back issues to get on to a top bunk. And because of the pain in doing so, he is more likely to fall as he is climbing up or getting down.")

Mr. Cropper's known maladies (1) would not place a reasonable prison official on notice of a risk of serious physical injury from falling out of bed; and (2) did not place these Defendants on notice. Without reasonable and actual awareness, none of the Defendants could have had a sufficiently culpable state of mind in order to be liable under the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 835-37 (1970) ("[A prison] official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he [or she] must also draw that inference."). "[D]eliberate indifference requires more than evidence that the defendants *should* have recognized the excessive risk and responded to it; it requires evidence that the defendant *must* have recognized the excessive risk and ignored it." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 138 (3d Cir. 2001) (emphasis in original).

Plaintiff alleges that each of the Defendants (besides Danberg) had sufficient knowledge of Cropper's need for a bottom bunk. (*See* D.I. 120 at 12 n.4) ("Phelps, Endres, Doane, and Torres stated at a minimum that it was possible that Cropper had informed them that he needed to be on a bottom bunk for medical reasons.") However, Plaintiff does not show (nor even attempt to show) that any of the Defendants had knowledge of a substantial threat to Plaintiff's health if he was denied that bottom bunk. Plaintiff fails to argue with particularity that each of these Defendants was even aware of Plaintiff's lesser maladies. Taking all reasonable inferences in Plaintiff's favor, he falls short of alleging the necessary culpability. (*See* Tr. at 57-58) (Defense Counsel: "Do they have an obligation to take action on something that is not clear and apparent and, in fact, never got picked up by a medical provider in many visits? No.")

### 2. Supervisory Liability

Plaintiff acknowledges that Danberg was not personally informed that Plaintiff needed a bottom bunk, but alleges that Danberg, along with "Phelps, and Scarborough were deliberately indifferent to Cropper's serious medical needs by supervising the creation and implementation of a flawed bottom bunk assignment system." (D.I. 120 at 13) "Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were 'the moving force' behind the harm suffered by the plaintiff." *Guilfoil*, 2009 WL 688957, at *7 (quoting *Sample v. Diecks*, 885 F.2d 1099, 1117-18 (3d Cir.1989)). "Purpose rather than knowledge is required to impose liability on an

official charged with violations arising from his or her superintendent responsibilities." *Smith*, 2010 WL 2400468, at *5 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009))

As Defendants describe, Plaintiff alleges "there was an ongoing, systemic problem with assigning bottom bunks that the Defendants were aware of and failed to rectify." (D.I. 119 at 13) To support the notion that Danberg and Scarborough were aware of this systemic problem, Plaintiff points out that "they were defendants in two earlier lawsuits in which this Court noted problems with Vaughn's bottom bunk assignment system." (D.I. 220 at 13) (citing *Guilfoil*, 2009 WL 688957, at *2-3, 9; *Smith*, 2010 WL 2400468, at *6; *see also* Tr. at 32-35) Defendants respond by arguing that the two earlier lawsuits fall far short of indicating a "widespread" problem, especially given that "Mr. Phelps has been named in at least 275 actions in this Court alone and that Mr. Danberg has been named in over 200." (D.I. 122 at 5 & n.4)

In regard to Phelps, Plaintiff alleges that "a reasonable juror could conclude that Phelps – the Warden of Vaughn – knew about these issues." (D.I. 120 at 14) There is not substantial evidence to support such a finding. A reasonable factfinder could not find Phelps had the required degree of direct awareness and involvement.

Plaintiff's evidence regarding Scarborough and Danberg is also insufficient. The two lawsuits on which Plaintiff relies are not enough to allow Plaintiff to meet his burden. In *Guilfoil v. Pierce*, the Court denied summary judgment because it was "unclear if [the plaintiff's placement on a top bunk] occurred because of bureaucratic snafus or something else." 2009 WL 688957, at *8. The Court did not mention systemic problems in the bunking system, but rather found unanswered questions of fact regarding whether Scarborough was directly aware of a health concern of the plaintiff and failed to move him to a bottom bunk. *See id.* In *Smith v. Danberg*, the plaintiff's concerns with being denied a bottom bunk memo were dismissed on

summary judgment because "there is no evidence of record that [defendants] had any knowledge, whatsoever, of Smith's complaints." 2010 WL 2400468, at *6. Neither case resulted in an adverse judgment against Scarborough or Danberg, both of whom are frequently sued. These cases would not reasonably be found to have placed any defendant on notice of widespread bunk problems, nor on notice of problems with the specific policies challenged in the present case.

Plaintiff also challenges a regular practice of Defendant Scarborough: applying a presumption against granting permanent bottom bunk memoranda, even if the applicant has a permanent condition. (*See* Tr. at 29) ("He is not a doctor. He is not a nurse. He doesn't have the training to say this inmate actually does have these issues and therefore it wouldn't be safe to put them on a top bunk.") But there is not evidence that Defendant Scarborough overrode the judgment of Vaughn medical staff. (*See* Tr. at 52) ("He actually testified that he did not have the power to veto these but he could go back and ask for an end date.")

In sum, Plaintiff has failed to adduce sufficient evidence from which a reasonable factfinder could find that supervisory liability should be imposed on Danberg, Scarborough, or Phelps.

## C.    Americans with Disabilities Act and Rehabilitation Act

Defendants make a series of arguments to support their request for summary judgment on Plaintiff's claims under the ADA and RA. In response, Mr. Cropper acknowledges that an ADA claim may not be maintained against a defendant in his individual capacity but argues that his complaint is directed toward Defendants in their representative capacities. (D.I. 120 at 17) The Court need not address all of the parties' contentions because it agrees with Defendants that Plaintiff has not presented sufficient evidence from which a reasonable juror could find deliberate indifference to a disability.

Plaintiff argues that his "sleep seizures are a disability under the ADA because they substantially limit Cropper's sleeping by causing him to fall out of bed, which can injure him when he is in a top bunk." (D.I. 120 at 19) However, the prison was not aware, nor could it have been aware, of this alleged disability until after Plaintiff suffered the fall. Plaintiff cannot establish that he "was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity . . . *by reason of* his disability." *Bowers*, 475 F.3d at 553 n. 32 (emphasis added). Further, Mr. Cropper's foot deformity cannot form the basis of his ADA claim because it was not the cause of his fall.

Moreover, the parties agree that if the Court is granting summary judgment on the Eighth Amendment claim due to lack of evidence of deliberate indifference – which it is – then the Court may also grant summary judgment on the ADA and RA claims. (*See* Tr. at 40, 59) This, too, the Court will do.

## V.    Conclusion

For the reasons set forth above, Defendants' motion for summary judgment will be granted as to all claims.